UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                               No. 1:21-CR-4

       Plaintiff,

v.

                               Hon. Hala Y. Jarbou
                               United States District Judge

ALEXANDER SCOTT YOSSETT,


       Defendant.

_____/


UNITED STATES' TRIAL BRIEF


ANDREW BYERLY BIRGE
United States Attorney


SEAN M. LEWIS
Assistant United States Attorney

330 Ionia Avenue NW, Suite 501
P.O. Box 208
Grand Rapids, MI  49501-0208
(616) 456-2404

# TABLE OF CONTENTS

I.   Summary of Pertinent Proceedings ................................................................................... 4

II.  Factual Background ....................................................................................................... 4

   A.   The defendant sexually assaulted Child 1 and Child 2 ................................................ 4

   B.   The victims were under the age of 12 ........................................................................ 5

   C.   The victims are Indians .......................................................................................... 5

   D.   The defendant is not an Indian ................................................................................ 6

   E.   The events occurred in Indian Country ..................................................................... 6

   F.   The defendant denied assaulting the victim ............................................................... 6

   G.   The defendant's arrest ........................................................................................... 6

III. Statutes and Elements ................................................................................................... 7

   A.   Counts 1-4:  Aggravated Sexual Abuse of a Child Under 12 Years ............................... 7

      1.   Statutory Language .......................................................................................... 7

      2.   Elements ........................................................................................................ 8

      3.   Attempt ......................................................................................................... 8

   B.   Count 5: Abusive Sexual Contact with a Child Under 12 Year ..................................... 9

      1.   Statutory Language .......................................................................................... 9

      2.   Elements ........................................................................................................ 9

   C.   Additional Legal Authority and Related Discussion ................................................... 10

      1.   Specific Intent ............................................................................................... 10

      2.   Major Crimes Act ........................................................................................... 10

IV.  Child Victims and Witnesses ......................................................................................... 11

   A.   Protecting the Identity of the Child Victims ............................................................ 11

   B.   Age Appropriate Oath .......................................................................................... 11

   C.   Adult Attendant .................................................................................................. 12

   D.   Testimonial Aids ................................................................................................. 13

   E.   Leading Questions ............................................................................................... 13

   F.   Closed Circuit Television ...................................................................................... 13

      1.   Legal Authority .............................................................................................. 14

      2.   Possible Bases For CCTV That May Arise In This Case .......................................... 16

      3.   Logistics ....................................................................................................... 17

   G.   Courtroom Closure .............................................................................................. 17

V.   Potential Evidentiary Issues ............................................................................................... 19

   A.   Conjunctive/Disjunctive.............................................................................................. 19

   B.   Defendant's Statements – Admissible Against Him.................................................... 20

   C.   Defendant's Statements – Defendant May Not Offer His Prior Statements ................. 20

   D.   Federal Rule of Evidence 702 Witnesses.................................................................... 21

   E.   Prior Consistent Statements As Substantive Evidence ................................................ 22

   F.   Residual Hearsay Exception ....................................................................................... 23

   G.   Stipulations ................................................................................................................. 24

   H.   Victims' Statements of Identification .......................................................................... 24

   I.   Victims' Statements to Nurses..................................................................................... 24

VI.   The Crime Victims' Rights Act .................................................................................... 25

# I.    **Summary of Pertinent Proceedings**

On December 11, 2020, U.S. Magistrate Judge Berens signed a two-count criminal complaint, which charged the defendant with Aggravated Sexual Abuse of a Child Under 12 Years and Abusive Sexual Contact with a Child Under 12 Years. (R.1: Complaint, PageID.1). The defendant made his initial appearance on December 15, 2020. (R.5: Mins., PageID.17.) He was detained pending trial. (R.9: Order, PageID.25.)

On March 10, 2021, the grand jury returned a five-count Superseding Indictment, charging the defendant with four counts (Counts 1-4) of Aggravated Sexual Abuse of a Child Under 12 Years, and one count (Count 5) of Abusive Sexual Contact with a Child Under 12 Years. (R.26: S. Ind., PageID.58-62.)

Trial in this matter is scheduled to begin on June 8, 2021, and the final pretrial conference is scheduled for May 12, 2021. (R.25: Order, PageID.57.) The United States extended a plea offer to the defendant, but the defendant rejected the offer.

# II.    **Factual Background**

This section of the Trial Brief provides a brief overview of the case. Its purpose is not to provide a complete recitation of the facts or the evidence that will be presented at trial; instead, it is offered only to familiarize the Court with the case.

## A.  **The defendant sexually assaulted Child 1 and Child 2**

The United States expects that the evidence at trial will show that between 2018 and 2020, the defendant had access to Child 1 and Child 2 because he was in a relationship with the children's mother. During the time they were together, the defendant sexually assaulted the children in the ways alleged in the Superseding Indictment. Specifically, Count 1 alleges that "the defendant used and attempted to use his penis to penetrate the vulva and anus of Child 1."

(R.26: S. Ind., PageID.58.)  Count 2 alleges that "the defendant used and attempted to use his finger to penetrate the anal and genital opening of Child 1 with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person." (*Id.*, PageID.59.) Count 3 alleges that "the defendant intentionally touched, and attempted to intentionally touch, not through the clothing, the genitalia of Child 1 with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person." (*Id.*, PageID.60.)  Count 4 alleges that "the defendant intentionally touched, and attempted to intentionally touch, not through the clothing, the genitalia of Child 2 with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person." (*Id.*, PageID.61.)  And Count 5 alleges that "the defendant intentionally touched Child 2's genitalia and groin through the clothing, and he intentionally touched Child 2's buttocks and inner thigh directly and through the clothing, all with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person." (*Id.*, PageID.62.)

### B. The victims were under the age of 12

The victims in this case, Child 1 and Child 2, were both under the age of 12 at the times alleged in the Superseding Indictment.  The defendant has stipulated to this fact.  (R.32, Stip., PageID.79.)

### C. The victims are Indians

The Pokagon Band of Potawatomi Indians ("Pokagon Band") is a federally recognized tribe.  The records of the Pokagon Band show that the victims, Child 1 and Child 2, were enrolled members of that tribe at all times relevant to this case.  Membership in the Pokagon Band requires lineal descent from recognized members, ensuring the existence of some quantum

of Indian blood.  Thus, the victims are Indians as defined by Federal law.  The defendant has stipulated to the victims' Indian status.  (R.32, Stip., PageID.79.)

### D.  The defendant is not an Indian

The defendant has stipulated that he is not an Indian.  (R.32, Stip., PageID.79.)

### E.  The events occurred in Indian Country

The events described above occurred on property that is held in trust by the United States for the use and benefit of the Pokagon Band.  This property is located in Cass County, in the Southern Division of Western District of Michigan.  The defendant has stipulated that the children's residence is in Indian Country.  (R.32, Stip., PageID.79.)

### F.  The defendant denied assaulting the victim

On December 4, 2020, police interviewed the defendant.  He denied that anything happened.  He said that he may have touched Child 2 on accident while he was tickling her, but he said he "definitely wasn't trying to."[1]

### G.  The defendant's arrest

On December 15, 2020, the defendant was arrested on a Federal Criminal Complaint. Police asked him for his side of the story.  The defendant stated, in sum or substance, that there is their story, his story, and the truth.  He declined to give a further statement.

---

[1] This section summarizes only a portion of the defendant's statement to police.  It is not meant to be an exhaustive summary or to limit the government in any way in terms of (1) whether the government will use any or all of these statements at trial, or (2) whether it will use additional statements besides those summarized here.

### III. Statutes and Elements

#### A. Counts 1-4: Aggravated Sexual Abuse of a Child Under 12 Years

##### 1. Statutory Language

18 U.S.C. § 2241(c) provides, in relevant part:

> Whoever . . . in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in a **sexual act** with another person who has not attained the age of 12 years . . . or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life. (Emphasis added.)

Federal law makes this provision applicable in Indian Country, where the offender is non-Indian and the victim is an Indian. *See* 18 U.S.C. § 1152 ("the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States . . . shall extend to the Indian country").

Federal law provides the following definition for **sexual act**.

    (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

    (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

    (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

    (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2).

## 2. Elements

The elements of a violation of 18 U.S.C. § 2241(c) are as follows:

(A) First, that the defendant knowingly engaged in a sexual act with the victim.

(B) Second, that at the time of the sexual act, the victim was under the age of 12;

(C) Third, that the victim is an Indian;

(D) Fourth, that the defendant is not an Indian; and

(E) Fifth, that the offense occurred within Indian Country.

Source: *Sixth Circuit Criminal Pattern Jury Instructions* § 2.02 (July 1, 2019); 18 U.S.C. §§ 1151, 1152, 2241(c), 2246(2).

## 3. Attempt

Counts 1-4 also charge the defendant with attempting to commit the crime of Aggravated Sexual Abuse of a Child Under 12 Years. The elements of Attempted Aggravated Sexual Abuse of a Child Under 12 Years are as follows.

(A) First, the defendant intended to commit the crime of Aggravated Sexual Abuse of a Child Under 12 Years.

(B) Second, the defendant did some overt act that was a substantial step towards committing the crime of Aggravated Sexual Abuse of a Child Under 12 Years.

Source: *Sixth Circuit Criminal Pattern Jury Instructions* § 5.01 (July 1, 2019); 18 U.S.C. § 2241(c).

The United States included "attempt" in these charges in an abundance of caution, to foreclose any argument by the defense that the defendant is not guilty because he did not actually complete a sexual act (*e.g.*, penetration) with the victims. Thus, so long as he intended to engage in a sexual act with a victim, and so long as he did some overt act that was a substantial step

towards committing the crime, then he would be guilty of the attempt offense, regardless of whether he achieved actual penetration or under-the-clothing touching of the genitalia.

### B. Count 5: Abusive Sexual Contact with a Child Under 12 Year

Count 5 alleges Abusive Sexual Contact with a Child Under 12 Years, in violation of 18 U.S.C. § 2244(a)(5).

#### 1. Statutory Language

Section 2244(a)(5) provides, in pertinent part, as follows:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in or causes **sexual contact** with or by another person, if so to do would violate . . . subsection (c) of section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title and imprisoned for any term of years or for life.

18 U.S.C. § 2244(a)(5) (emphasis added).

Section 2246 defines "**sexual contact**" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). As discussed above, "subsection (c)" prohibits sexual acts with a child under 12. *See* 18 U.S.C. § 2241(c). Federal law makes these provisions applicable in Indian Country, where the offender is non-Indian and the victim is an Indian. *See* 18 U.S.C. § 1152.

#### 2. Elements

The elements of a violation of 18 U.S.C. § 2244(a)(5) are as follows.

(A) First, that the defendant knowingly engaged in sexual contact with the victim.

(B) Second, that at the time of the sexual contact, the victim was under the age of 12.

(C) Third, that the victim is an Indian.

(D) Fourth, that the defendant is not an Indian; and

(E) Fifth, that the offense occurred within Indian Country.

Source:  *Sixth Circuit Criminal Pattern Jury Instructions* § 2.02 (July 1, 2019); 18 U.S.C. §§ 1151, 1152, 2244(a)(5).

### C.    Additional Legal Authority and Related Discussion

#### 1. Specific Intent

A violation of Section 2241(c) involving penile penetration or attempted penile penetration – such as that charged in Count 1 – requires no showing of intent to abuse, humiliate, harass, arouse, etc.  *See* 18 U.S.C. § 2246(2)(A).

Violations of Section 2241(c) involving digital penetration and intentional touching "not through the clothing" – such as those charged in Counts 2-4 – do.  *See* 18 U.S.C. § 2246(2)(C-D) (defining those type of sexual acts in a way that requires specific intent).  So too do violations of 18 U.S.C. § 2244, such as that charged in Count 5.  *See* 18 U.S.C. § 2246(3) (defining "sexual contact" in a way that requires specific intent).

Courts have held that the requisite intent can be inferred from the nature of the touching itself.  *See, e.g., United States v. Lee*, 232 F.3d 653, 656 (8th Cir. 2000) (holding that victim's testimony that defendant "touched and rubbed her genital area at night while he believed she was asleep . . . implies its own intent").

#### 2. Major Crimes Act

Even if the defendant were an Indian, the United States would still have jurisdiction over the offenses charged in the Superseding Indictment.  *See* 18 U.S.C. § 1153(a) ("Any Indian who commits . . . a felony under chapter 109A . . . within the Indian country, shall be subject to the

same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.")

## IV.   <u>Child Victims and Witnesses</u>

### A.  Protecting the Identity of the Child Victims

Section 3509(d) provides privacy protections for child victims and witnesses.  *See* 18 U.S.C. § 3509(d).   Among the information to be kept private is the name of a child.  *Id*.   In accordance with 18 U.S.C. § 3509(d), the United States requests that the Court take appropriate steps to protect from public disclosure the identity of the child victims.   The United States recommends having potential jurors review a printed list containing the names of the victims (in lieu of the undersigned reading the names aloud).   Alternatively, the Court could close the courtroom while the names are read to the venire.   The United States asks the Court to provide the parties with guidance on this issue at the final pretrial conference.

### B.  Age Appropriate Oath

Federal Rule of Evidence 611(a) confers broad discretion on this Court in controlling: "the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611(a).

In addition, Federal Rule of Evidence 603 permits witnesses to declare that they will testify truthfully by "oath or affirmation" administered "in a form designed to impress that duty on the witness's conscience."   The Notes of the Advisory Committee state that "[t]he rule is designed to afford the flexibility required in dealing with . . . children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required."

Asking a child "do you solemnly swear or affirm" may mean something entirely different to a child than to an adult witness. The United States requests that rather than administering the standard oath used for adult witnesses, the Court employ a child-fair oath that the children will understand and agree to follow before testifying. The United States proposes that the Court simply ask the children: "Do you promise that you will tell the truth?" or "Do you promise to talk about only things that really happened?" *See, e.g., United States v. Drift*, 2014 WL 4662505, at *1 (D. Minn. Sept. 19, 2014) (granting United States' motion in limine for a child friendly oath by agreeing to replace the term "swear" with "promise" to tell the truth).

### C. Adult Attendant

Section 3509 provides a right for child victims and witnesses to be accompanied by an adult attendant. Specifically, the statute provides:

> A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child. The court, at its discretion, may allow the adult attendant to remain in close physical proximity to or in contact with the child while the child testifies. The court may allow the adult attendant to hold the child's hand or allow the child to sit on the adult attendant's lap throughout the course of the proceeding. An adult attendant shall not provide the child with an answer to any question directed to the child during the course of the child's testimony or otherwise prompt the child. The image of the child attendant, for the time the child is testifying or being deposed, shall be recorded on videotape.

18 U.S.C. § 3509(i).

The United States anticipates that one or more of the child witnesses will assert the right to be accompanied by an adult attendant. The United States expects to be in a position to advise the Court at the final pretrial conference about which of the witnesses would like an adult attendant and who that adult attendant would, with the Court's approval, be.

### D. Testimonial Aids

Section 3509 also provides that "[t]he court may permit a child to use anatomical dolls, puppets, drawings, mannequins, or any other demonstrative device the court deems appropriate for the purpose of assisting a child in testifying." 18 U.S.C. § 3509(l). At trial, the United States may ask the Court to permit any child witness to use such aids while testifying, if such aids will assist the child in testifying.

### E. Leading Questions

Federal Rule of Evidence 611(c) provides that "Leading questions should not be used on direct examination except as necessary to develop to witness's testimony." Fed. R. Evid. 611(c). The Advisory Committee Notes state that there is a recognized exception to this rule for "the child witness." *Id.*, Note to Subdivision (c) (1972 proposed rules).

### F. Closed Circuit Television

Section 3509 provides that a child may testify live via 2-way closed circuit television (CCTV) if certain criteria are met. 18 U.S.C. § 3509(b)(1). The statute provides that if the United States seeks to use this procedure, it must file a motion with the court "at least 7 days before the trial date, unless the court finds on the record that the need for such an order was not reasonably foreseeable." 18 U.S.C. § 3509(b)(1)(A).

At present, and after consulting with the children's therapists, the United States is optimistic that both Child 1 and Child 2 will be able to testify in open court. In the event circumstances change before trial, we will file the appropriate motion in accordance with 18 U.S.C. § 3509 as soon as we can reasonably do so. However, it is possible that an issue may arise unexpectedly in the middle of trial, such that the United States may need to seek an order

permitting an alternative, such as CCTV.   For these reasons, and as a courtesy to the Court and

counsel, the United States has briefed below the applicable legal standard.

### 1. Legal Authority

The Child Victims' and Child Witnesses' Rights Act ("the Act") provides, in pertinent

part:

> (A)     In a proceeding involving an alleged offense against a child, the attorney for the Government . . . may apply for an order that the child's testimony be taken in a room outside the courtroom and be televised by 2-way closed circuit television.  The person seeking such an order shall apply for such an order at least 7 days before the trial date, unless the court finds on the record that the need for such an order was not reasonably foreseeable.

> (B)     The court may order that the testimony of the child be taken by closed-circuit television as provided in subparagraph (A) if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:

>> (i)      The child is unable to testify because of fear.

>> (ii)     There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

>> (iii)    The child suffers a mental or other infirmity.

>> (iv)    Conduct by defendant or defense counsel causes the child to be unable to continue testifying.

> (C)     The court shall support a ruling on the child's inability to testify with findings on the record.  In determining whether the impact on an individual child of one or more of the factors described in subparagraph (B) is so substantial as to justify an order under subparagraph (A), the court may question the minor in chambers, or at some other comfortable place other than the courtroom, on the record for a reasonable period of time with the child attendant, the prosecutor, the child's attorney, the guardian ad litem, and the defense counsel present.

18 U.S.C. ' 3509(b)(1).

In *Maryland v. Craig*, the United States Supreme Court held that the Sixth Amendment's

Confrontation   Clause   does   not   "guarantee[]   criminal   defendants   the   absolute   right   to   a

face-to-face meeting with witnesses against them at trial." *Maryland v. Craig*, 497 U.S. 836, 844 (1990). The Court found, instead, that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id*. at 850. The Court found that the Confrontation Clause ensures the reliability of testimony because it (1) ensures that the witness will give his or her statements under oath, (2) forces the witness to submit to cross-examination, and (3) allows the trier of fact to observe the witness' demeanor. *Id*. at 845-46. The Court further found that "the protection of minor victims of sex crimes from further trauma and embarrassment" is a compelling government interest that, in some cases, "may be sufficiently important to outweigh a defendant's right to face his accusers in court." *Id*. at 852-53. Indeed, the Court observed that "where face-to-face confrontation causes significant emotional distress in a child witness, there is evidence that such confrontation would in fact disserve the Confrontation Clause's truth-seeking goal." *Id*. at 857(emphasis in original). The Court concluded that "if a State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id*. at 855. The Court stated that the requisite showing of necessity must be made on a case-by-case basis and set out three factors for the trial court to consider. *Id*. These factors are: (1) whether use of a special procedure is necessary to protect the welfare of the particular child witness, (2) whether the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant, and (3) whether the emotional distress suffered by the child witness in the presence of the defendant is

more than de minimis.  *Id*. at 855-56.  With respect to the third factor, there must be more than "mere nervousness or excitement or some reluctance to testify" on the part of the child witness. *Id*. at 856.

Section 3509 was enacted months after *Craig*.  The Sixth Circuit has held that the *Craig* test continues to control whether a child may be permitted to testify outside the presence of the defendant under the statute.  *See United States v. Wandahsega*, 924 F.3d 868, 879 (6th Cir. 2019); *United States v. Cox*, 871 F.3d 479, 484 (6th Cir. 2017); *United States v. Moses*, 137 F.3d 894, 897-98 (6th Cir. 1998) ("the statute requires a case-specific finding that a child witness would suffer substantial fear or trauma and be unable to testify or communicate reasonably because of the physical presence of the defendant).

### 2. Possible Bases For CCTV That May Arise In This Case

<u>Fear</u>:  Inability to testify because of fear of the defendant can satisfy the factors discussed above.  Expert testimony is not required for the Court to make a finding that the child is unable to testify because of fear.  *United States v. Yazzie*, 743 F.3d 1278, 1292 (9th Cir. 2014) ("Congress required expert testimony in only one limited circumstance"); *United States v. Giordano*, 172 F. App'x 340, 343 (2d Cir. 2006) (expert testimony not required).

<u>Trauma</u>:  Alternatively, a substantial likelihood of emotional trauma will suffice if established by expert testimony.  *See* 18 U.S.C. § 3509(b)(1)(B)(ii).  The "expert testimony" called for by the statute requires "'special skill or knowledge' generally relating to trauma." *Moses*, 137 F.3d at 899-900.  "Presumably, the expertise of a psychiatrist, psychologist, or other children's mental health specialist is required."  *Id*. at 899.

<u>Infirmity</u>:  The statute also provides that infirmity is another ground that may justify and necessitate testimony by CCTV.  *See* 18 U.S.C. § 3509(b)(1)(B)(iii).

<u>Conduct by the defendant</u>:  The statute further provides that a basis for employing CCTV can be "[c]onduct by defendant or defense counsel [that] causes the child to be unable to continue testifying."  *See* 18 U.S.C. § 3509(b)(1)(B)(iv).  Should "[c]onduct by defendant or defense counsel cause [any child in this case] to be unable to continue testifying," the United States will ask the Court to stop the proceedings and permit the child to continue testifying via CCTV.

### 3. Logistics

If the potential need for CCTV arises, and if the Court wishes to "question the minor[s]" about these topics, the Act provides that such questioning may take place "in chambers, or at some other comfortable place other than the courtroom."  18 U.S.C. § 3509(b)(1)(C).  Defense counsel, but not the defendant, is permitted to be present for such questioning.  *Id*.

If the Court then orders testimony via CCTV, the statute lays out guidelines regarding the logistics of such testimony.  *See* 18 U.S.C. § 3509(b)(1)(D).  Unlike the *Craig* case, Section 3509 calls for a closed-circuit television connection broadcasting the defendant's image to the room where the witness is located.  *Id*.  It is not required that this monitor be placed in the child's field of vision, as long the child knows the monitor is there, and the child can view the monitor, if desired.  *United States v. Etimani*, 328 F.3d 493, 499-500 (9th Cir. 2003).  This places the defendant in the same position he would be in if the child testified in court, as there is no rule requiring a witness to look at the defendant while testifying in court.

### G.  Courtroom Closure

At present, the United States does not anticipate asking the court to close the courtroom during the child witnesses' testimony.  Nevertheless, we have briefed the issue here should the need arise to consider this form of accommodation during trial.

Section 3509 also provides for the possibility of closing the courtroom and exclusion of all those "who do not have a direct interest in the case" during the testimony of a child if testifying "in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate." 18 U.S.C. § 3509(e). "Such an order" must be supported by on-the-record findings and must "be narrowly tailored to serve the Government's specific compelling interest." *Id.* However, "[b]y its terms, § 3509(e) does not require the court to hear testimony from the child, a guardian ad litem, or expert, prior to deciding a closure motion." *United States v. Yazzie*, 743 F.3d 1278, 1292 (9th Cir. 2014).

The Ninth Circuit addressed this issue in *United States v. Yazzie*, 743 F.3d 1278 (9th Cir. 2014). The court noted four separate factors that the Supreme Court has identified as important to address when considering closure. These factors "must be considered on a case-by-case basis," and "a court must consider the circumstances of the particular case, such as the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives, because these factors may affect the significance of the interest." *Id.* at 1288 (citation and internal quotation marks omitted).

First, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced . . ." and the "[t]he Supreme Court has recognized that the physical and psychological well-being of a minor is a compelling higher value that can justify a closure." *Yazzie*, 743 F.3d at 1287 (citation and internal quotation marks omitted). Similarly, "ensuring a child victim's ability to effectively communicate is also a compelling higher value that can justify a closure." *Id.* In addition, where "the closure at issue is a relatively narrow one, the inquiry is not a demanding one, and a court can rely on the "'common sense conclusion' that [the

victim] would likely not be able to communicate effectively in an open courtroom." *United States v. Ledee*, 762 F.3d 224, 229 (2d Cir. 2014).

Second, the closure must be no broader than necessary. *Yazzie*, 743 F.3d at 1287. Temporary closure during the testimony of a victim is narrowly tailored. *Id*. Furthermore, closure can be orchestrated around breaks to address any undue prejudice concerns. *Id*. at 1289.

Third, "'the trial court must consider reasonable alternatives to closing the proceeding.'" *Id*. at 1287. Considering the possibility of CCTV is one way to consider other, reasonable alternatives. *See, e.g.*, *Yazzie*, 743 F.3d at 1291. Furthermore, the Ninth Circuit has held that a court need not even consider options such as CCTV to satisfy this element. *Id*. at 1289-90. *But see Ledee*, 762 F.3d 224 (broad consideration of alternatives appropriate).

Finally, "the trial court "must make findings adequate to support the closure." *Id*. The United States asks the Court to make such findings if the need to close the courtroom arises.

## V.    Potential Evidentiary Issues

The United States has outlined and briefed a number of evidentiary issues that may arise during the trial. For ease of reference, we have listed the issues in alphabetical order.

### A.  Conjunctive/Disjunctive

"'It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively.'" *United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007) (quoting *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983)). At trial, the government may prove and the trial judge may instruct in the disjunctive form used in the statute. *Id*.; *see also United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012).

### B. Defendant's Statements – Admissible Against Him

The defendant made a number of statements in this case. Those statements are admissible against the defendant under Federal Rule of Evidence 801(d)(2)(A) as admissions by a party-opponent. Fed. R. Evid. 801(d)(2)(A). The First Amendment does not prohibit the government from using a defendant's statements against him. *See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent").

### C. Defendant's Statements – Defendant May Not Offer His Prior Statements

The government anticipates that the defendant may attempt to offer a number of his prior statements into evidence to prove the truth of the matter asserted therein. Such statements are hearsay. Fed. R. E. 801(c). The exception under 801(d)(2) does not apply to a defendant who attempts to offer his own prior statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses. Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury.") (emphasis in original) (internal citations and footnote omitted).

Defendants often seek to avoid this result by invoking Federal Rule of Evidence 106, which codifies the Rule of Completeness. This Rule states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Courts employ this Rule when the proffered evidence is

necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion. Absent that, the Rule does not permit a defendant to admit into evidence statements that are exculpatory and therefore hearsay simply because they are part of a statement that is otherwise inculpatory. *See, e.g., United States v. Ford*, 761 F.3d 641, 651-52 (6th Cir. 2014).

The Sixth Circuit has explained that "the 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009). However, the rule "is not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). "Right or wrong, [the Sixth Circuit] has acknowledged that under *Costner*, '[e]xculpatory hearsay may not come in solely on the basis of completeness.'" *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013) (*quoting United States v. Shaver*, 89 F. App'x 529, 533 (6th Cir. 2004)).

### D. Federal Rule of Evidence 702 Witnesses

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. The party calling an expert witness need not, and indeed should not, formally "offer" the witness for the Court's acceptance as an expert. *See United States v. Johnson*, 488 F.3d 690, 697-98 (6th Cir. 2007). The admission of expert testimony is a matter within the sound discretion of the trial court. *United States v. Bonds*, 12 F.3d 540, 555-557 (6th Cir. 1994); *United States v. Langan*, 263 F.3d 613, 622 (6th Cir. 2001).

The United States intends to call Debra McEldowney (MSN, RN, SANE-A, SANE-P) and/or Bonnie Christopher (RN, SANE-A, SANE-P) to testify about SANE examinations, the significance of a finding of injury or non-injury, and their examinations of and conclusions about Child 1. The United States noted its intent to call such witnesses in its Initial Pretrial Conference Statement (R.17: IPTCSS, PageID.43), and it has since provided the defense with written notice of the anticipated testimony, as well as copies of the witnesses' CVs and reports.

Because the above witnesses will be testifying as both fact and expert witnesses, the United States is requesting a pattern jury instruction for witnesses who offer both lay and expert testimony.

### E. Prior Consistent Statements As Substantive Evidence

Should the defendant attack the credibility of the victims or witnesses in this case, the United States may seek to introduce as substantive evidence prior statements – including, but not limited to, recorded interviews with trained forensic child interviewers – to rehabilitate the witnesses' credibility. Such statements are admissible under Federal Rule 801(d)(1)(B).

Effective December 1, 2014, Federal Rule of Evidence 801(d)(1)(B) was amended to include a second basis on which a prior consistent statement can be admitted as substantive evidence: "to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(ii). The Advisory Committee Notes explain, "[t]he intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness – such as the charges of inconsistency or faulty memory."

The Sixth Circuit recently summarized the applicable standard for admitting prior consistent statements under the Rule in a similar case involving a sexual assault against a child. *See United States v. J.A.S., Jr.*, 862 F.3d 543, 545 (6th Cir. 2017). At issue in that case was

whether the district court had properly admitted a prior consistent statement that a child victim made during a forensic interview. *Id*. The Sixth Circuit explained: "Rule 801(d)(1)(B)(ii) . . . allows for the admission of prior out-of-court statements of a trial witness (here, [the child victim]) if three requirements are met: first, the statements are consistent with the witness's testimony; second, the statements are offered to rehabilitate the witness after an opposing party has tried to impeach her 'on another ground'; and third, the opposing party is able to cross-examine the witness about the prior statements." *Id*. Because all three requirements had been met, the Sixth Circuit held that the district court had properly admitted the child's prior consistent statement made during a videotaped forensic interview. *Id*.

### F. Residual Hearsay Exception

Although the United States does not believe it will be necessary to resort to this rule, spontaneous statements the victims made to others about what happened would be admissible under the residual hearsay exception. *See* Fed. R. Evid. 807. Rule 807(a) provides that:

> [u]nder the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

In cases involving sexual assaults against children, courts have looked to the following factors when evaluating whether there were "particularized guarantees of trustworthiness": "'(1) spontaneity; (2) consistent repetition; (3) the mental state of the declarant; (4) the use of terminology unexpected of a child of similar age; and (5) the lack of a motive to fabricate.'" *United States v. Wandahsega*, 924 F.3d 868, 881 (6th Cir. 2019) (citation omitted).

### G. Stipulations

The parties have stipulated to several facts and have formally filed those stipulations. Specifically, the parties have stipulated that (1) the defendant is not an Indian; (2) Child 1 and Child 2 are Indian females and were both under the age of 12 at the times alleged in the Superseding Indictment; and (3) Child 1 and Child 2's residence is located within Indian Country. (R.32, Stip., PageID.79.)

### H. Victims' Statements of Identification

The United States intends to call both Child 1 and Child 2 as witnesses at trial. Accordingly, any prior statements they made about the identity of the person who sexually assaulted them would be admissible as non-hearsay statements of identification. *See* Fed. R. Evid. 801(d)(1)(C).

### I. Victims' Statements to Nurses

Part of the government's case may include testimony by nurses about Child 1's disclosure of abuse. These out-of-court statements will be offered under Federal Rule of Evidence 803(4), which creates an exception to the hearsay rule for statements made as part of medical diagnosis and treatment. The Sixth Circuit has confirmed that the exception applies to statements child victims make to nurses and doctors about sexual abuse. *See United States v. Wandahsega*, 924 F.3d 868, 880 (6th Cir. 2019). The key inquiry under the Rule is whether the medical professional "'undertook her interviews for the primary purpose of medical diagnosis, rather than for some other purpose . . . .'" *Id*. (quoting *United States v. Kappell*, 418 F.3d 550, 556-57 (6th Cir. 2005)). That was the case here, and the statements are therefore admissible under the rule.

## VI.    The Crime Victims' Rights Act

The victims in this case, Child 1 and Child 2, are minors.  Their parents may wish to watch some, or all, of the trial.  If they do, then they have a right not to be excluded from the proceedings.  This is so because the Crime Victims' Rights Act ("CVRA") provides that "[i]n the case of a crime victim who is under 18 years of age . . . the legal guardians of the crime victim . . . may assume the crime victim's rights under this chapter . . . ."  18 U.S.C. § 3771(e).  The CVRA further provides that crime victims have "[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding."  18 U.S.C. § 3771(a)(3); *see also In re Mikhel*, 453 F.3d 1137 (9th Cir. 2006) ("A mere possibility that a victim-witness may alter his or her testimony as a result of hearing others testify is therefore insufficient to justify excluding him or her from trial. Rather, a district court must find by clear and convincing evidence that it is highly likely, not merely possible, that the victim-witness will alter his or her testimony."); *United States v. Edwards*, 526 F.3d 747 (11th Cir. 2008) ("a criminal defendant has no constitutional right to exclude witnesses from the courtroom").

Federal Rule of Criminal Procedure 60(a)(2) similarly provides for victims' rights and provides that a victim must not be excluded "unless the court determines by clear and convincing evidence that the victim's testimony would be materially altered if the victim heard other testimony at that proceeding."  Fed. R. Crim. P. 60(a)(2).  Federal Rule of Evidence 615 also contains an explicit exception for "a person authorized by statute to be present."  Fed. R. Evid. 615(d).

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: May 7, 2021                    <u>    */s/ Sean M. Lewis*         </u>
                                      SEAN M. LEWIS
                                      Assistant United States Attorney